FILED

DEC 2 6 2012

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

CHRISTUS HEALTH SYSTEMS, INC. and §
CHRISTUS SANTA ROSA HEALTH CARE §
CORPORATION, §
§
    Plaintiffs, §
§
v. §
§
AMERICAN CONSULTANTS RX, INC, §
AMERICAN CONSULTANTS, INC, AND §
CHARLES MYRICK, §
§
§
    Defendants. §

CIVIL ACTION NO. _____

**SA 12 CV 1221 OG**

ORIGINAL COMPLAINT

<u>JURY DEMANDED</u>

**ORIGINAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs CHRISTUS Health Systems, Inc. ("CHRISTUS Health") and CHRISTUS Santa Rosa

Health Care Corporation ("CSR") (collectively "CHRISTUS") file this Original Complaint for

Damages and Injunctive Relief against Defendants, American Consultants RX, Inc ("ACRX");

American Consultants, Inc. ("ACIRX"); and Charles Myrick a/k/a Charles L. Myrick, Charles

Myrick, Jr., Charles L. Myrick, Jr. and/or Charles Lee Myrick ("Myrick"), (collectively

"DEFENDANTS"); and respectfully shows the Court as follows:

**I.   PARTIES**

1.      Plaintiff CHRISTUS Health Systems Inc. is a non-profit corporation chartered

under the laws of the State of Texas with its principal offices at Las Colinas Corporate Center II,

6363 North Highway 161, Suite 450, Irving, Texas 75038.  CHRISTUS Health owns the

CHRISTUS® and CHRISTUS Greek Cross® marks at issue in this matter.

2.      Plaintiff CHRISTUS Santa Rosa Health Care Corporation is a non-profit

corporation chartered under the laws of the State of Texas with its principal offices at 333 North

- 1 -

Santa Rosa Street, San Antonio, Texas 78207. CSR holds the copyright on the photographs, images, expressions and other materials imprinted on a tangible media and that are at issue in this matter. In addition, CSR owns the CHRISTUS Santa Rosa® service mark at issue in this cause.

3.     Defendant American Consultants RX, Inc. is a for profit corporation chartered under the laws of the State of Georgia and lists as its principal office an address as follows: P.O. Box 161336, Atlanta Georgia 30321. Upon information and belief, its officers are located at 2900 Camp Creek Parkway, #D-13, College Park, Georgia 30337. Defendant ACRX may be served through its Registered Agent, Charles Myrick at 2900 Camp Creek Parkway, #D-13, College Park, Georgia 30337.

4.     Defendant American Consultants, Inc. is a for profit corporation chartered under the laws of the State of Georgia and lists as its principal office an address as follows: P.O. Box 161336, Atlanta Georgia 30321. Upon information and belief, its officers are located at 2900 Camp Creek Parkway, D13, College Park, Georgia 30337. Defendant ACIRX may be served through its Registered Agent, Charles L. Myrick, Jr. at 2900 Camp Creek Parkway, Ste. D-13, College Park, Georgia 30337.

5.     Defendant Charles Myrick is an individual residing in the State of Georgia. Upon information and belief, Mr. Myrick is the President, Chief Executive Officer, and Chief Financial Officer of ACRX and ACIRX and may be personally served at his residence, 2900 Camp Creek Parkway, Apartment D-13, College Park, Georgia 30337.

## II.     JURISDICTION AND VENUE

6.     This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et. seq.*; trademark infringement, false affiliation, and unfair competition, all under 15

U.S.C. § 1051 *et. seq.* ("Lanham Act"); and violations of the Injury to Business Reputation or Trade Name or Marks provisions of the TEXAS BUSINESS AND COMMERCE CODE, §16.29.

7.     This court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §1121(a) and under 28 U.S.C. §1331 and §§1338(a) and 1338(b).

8.     This court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a) and the doctrine of supplemental jurisdiction.

9.     The exercise of personal jurisdiction in Texas is proper because CHRISTUS Health and CSR are Texas non-profit corporations that regularly deliver services in Texas, conduct the business of medical caregiving in Texas and remand the proceeds of its charitable purpose to communities within the State of Texas including those within the San Antonio Division of the Western District.  The acts, events and transactions giving rise to the causes of action herein have occurred in the Western District of Texas.  Specifically, Defendants made an uninvited, unaccepted offer to convey so-called "pharmacy discount cards" to CSR and then used that uninvited and unwelcomed act to promote a false affiliation with CSR.  In addition, without permission, Defendants appropriated CHRISTUS's copyrighted images and materials created in Texas and addressed to its San Antonio market audience and then used them for its own commercial endeavors.   Without permission, Defendants also appropriated CHRISTUS's distinctive trademarks that are used famously in Texas, and employed them for their own commercial purposes.  Defendants have established contacts with the State of Texas and have purposefully availed themselves of the resources and instrumentalities of the State of Texas by advertising that they have arranged to have their so-called discount cards recognized in more than 250 San Antonio area drug stores including various Walgreen's, CVS, Wal-Mart and HEB Pharmacies, *inter alia* and by using the intellectual property that they expropriated from

CHRISTUS Health and CSR to promote, advertise, market, offer to sell, and distribute a wide variety of products throughout the United States, including in the Western District of Texas.

10.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §1391(b)(2) and §1400(b).

### III.     FACTUAL BACKGROUND

**A.     The CHRISTUS Marks Have Become Synonymous With Quality Healthcare Regardless Of A Patient's Ability To Pay.**

11.     For well over a hundred years two faith-based ministries — the Incarnate Word Health System and the Sisters of Charity Health Care System — have been preeminent health care providers to all who were sick regardless of their ability to pay. In 1999, the two ministries merged to form CHRISTUS Health whose corporate entity ratified the enduring mission that flowed from the original call of those congregations: To extend the healing ministry of Jesus Christ.

12.     Built upon five core values — dignity, integrity, excellence, compassion and stewardship — CHRISTUS Health is today ranked among the top ten Catholic health systems in the United States. CHRISTUS Health includes more than 40 hospitals and facilities throughout seven U.S. states as well as six states in Mexico. CHRISTUS serves communities that have traditionally underserved populations and is located in places that have some of the highest rates of uninsured residents. In addition, CHRISTUS regularly participates in relief efforts around the world whenever enormous disasters present health crises such as the recent calamity in Haiti. Moreover, CHRISTUS provides over 13% of its net patient revenues to fund (i) charity care (the unpaid portion of medical services performed for under- or un-insured patients); and, (ii) community benefits in health and welfare spending.

13.     CHRISTUS Health owns the mark in the CHRISTUS name which is registered with the U.S. Patent and Trademark Office, Serial Number 75550016.  The mark has been in use from as early as 1999.  CHRISTUS Health has invested thought, effort and significant monies in developing its mark and integrating it with its mission and ministry.  CHRISTUS is Latin for "Christ," and proclaims publicly the core of the CHRISTUS Health mission. The style and name choice also recognizes the heritage of the two congregational sponsors, the Sisters of Charity of the Incarnate Word in Houston and San Antonio.  The name and mark "CHRISTUS" has become iterative of Christ's devotion to the least among us, especially the sick, the infirm and the hurting poor.  For the secular residents of the communities served by CHRISTUS, the name and the mark signify a cherished community resource that expertly practices life-saving medicine without regard to a patient's ability to pay.

14.     CHRISTUS Health owns the mark in its logo which features the CHRISTUS Greek Cross design and it is registered with the U.S. Patent and Trademark Office, Serial Number 75570768.  The mark has been in use from as early as 1999.  CHRISTUS Health has invested thought, effort and significant monies in developing its logo and integrating it with its mission and ministry.  The mark reflects the healing ministry of Jesus Christ by combining a medical cross and a religious cross. The flowing banner on the cross is a common symbol of the risen Christ, while the royal purple signifies Christ.  The flowing banner also conveys a sense of motion meant to portray CHRISTUS Health moving forward into a new era of service to its communities.  The public recognizes the famous logo and associates it with expert medical care available to anyone without regard to a person's religion, ethnicity, heritage or creed or a patient's ability to pay.  CHRISTUS hospitals are certified by the Joint Commission, an independent, not-for-profit organization recognized nationwide as a symbol of quality that

reflects an organization's commitment to meeting certain performance standards.   CHRISTUS engages in and practices mainstream medicine through its granting of medical privileges to highly qualified physicians, its affiliation with professional nursing and other care-giver organizations and its coordinating activities with medical licensing bodies within the states in which it resides, including Texas.   CHRISTUS is the holder of numerous awards for medical expertise, competencies, and patient satisfaction.

**B.     CHRISTUS Santa Rosa Is A Preeminent Healthcare Provider In The Greater San Antonio Community.**

15.     CHRISTUS Santa Rosa Health Systems was founded in 1869 by the Sisters of Charity of the Incarnate Word.    At its inception, the population of San Antonio was approximately 12,000 and there was no public hospital until the Sisters established Santa Rosa.

16.     Today the CSR healing ministry includes five full service hospitals with 1,159 licensed beds as well as a number of specialty centers and satellite facilities.   In addition, CSR is home to 43 different outpatient clinics of which 38 are devoted to pediatric health practices and care.

17.     CSR has a renowned pharmacy department.   It is open for business 24 hours per day, 365 days per year.    Annually it dispenses almost 1,900,000 doses of medication.    The pharmacy holds a "Class C" pharmacy license which authorizes it to perform services and operations that exceed those typically associated with "Class A" license holders, most often referred to as retail pharmacies.   In addition to compounding and dispensing medications, many of which are highly specialized, CSR pharmacists engage in research, author scholarly papers and posters, and mentor pharmacy residents from the pharmacy schools at Incarnate Word University and the University of Texas.

18.    The CSR pharmacy department dispenses medication to patients confined to the hospital and under the orders of a prescribing physician.  In addition, it dispenses medications to outpatient treatment centers for the benefit of patients undergoing curatives or diagnostics that have a pharmacological component such as oncology treatments, nuclear imaging, dialysis and the like.  The pharmacy does not act as a retail pharmacy and does not fill prescriptions for outpatients, with one exception:  In rare instances, under a doctor's order, it will fill a prescription for a departing in-patient if and only if the medication is necessary for the person's safe transit to a location where he can fill his prescription.

19.    The CSR pharmacy does not now and never has accepted the Defendants' so-called pharmacy discount card.  The CSR pharmacy participates in a program coordinated by SunRx that subsidizes prescriptions for patients with financial need.  The program is available to CSR under the auspices of a 340(b) funding mechanism because CSR serves a disproportionately poor clientele.

20.    CSR owns the service mark to the name "Santa Rosa" registered with the U.S. Patent and Trademark Office, Serial Number 76106811.   CHRISTUS Santa Rosa is a venerated San Antonio institution famously known by its mark as a charitable giver to the community and a preeminent provider of quality healthcare services, including pharmaceuticals, to every person without exception including those whose ability to pay is impaired or vacated.

**C.    CHRISTUS Santa Rosa's Intellectual Property And Information Materials Are In Furtherance Of Its Health Care Ministry And Its Charitable Mission.**

21.    CHRISTUS and CSR are providers of high quality medical services, and the materials it distributes are largely of the informational variety.  For example, CSR seeks to inform the public about its vital services such that the public might understand that treatments are available when they may have assumed that none existed.

22.     CSR hosts events held at their facilities and publicizes them for the very purposes explained above.  For example, in this past year, CSR has invited members of the San Antonio Spurs, the local professional NBA team, to visit children stricken with cancer.  Similar events were held with the San Antonio Rampage, a professional ice hockey team.  At the various events, official photographs are taken and the patients involved authorize the use of the photos for specific purposes before CSR publishes them. The photos are compiled into albums, sometimes combined with captions, and published in the social media in venues such as Facebook.  The albums are generally thematic and are titled as such.  For example, last Christmas, an album was posted entitled "Spurs Bring Holiday Cheer to Children at CHRISTUS Santa Rosa Children's Hospital."  Another posted album recorded events at a celebration for Halloween and still another was titled "2011 Cards for Kids" featuring messages of healing.

23.     CHRISTUS Santa Rosa owns valid and subsisting copyrights in the photos, albums and social media postings and they are original works of authorship.  CSR has filed copyright applications, together with the requisite filing fees and deposit materials, for these photos with the United States Copyright office.  The United States Copyright office has received CSR's copyright applications, and these applications are now pending.  Copyright Applications, EXHIBIT A, attached.

**D.     Defendants Falsely Affiliate With CHRISTUS And Illegally Infringe Its Mark And Copyrights.**

24.     On or about July 2, 2010, the facsimile machine at the CHRISTUS Santa Rosa Cystic Fibrosis Clinic received a transmission from American Consultants Rx addressed to the "Executive Director."   The facsimile was undated, left blank the number of pages being transmitted, and had a return address of a postal box only. The text of the message in the facsimile contained many grammatical errors but the gist of the message appeared to be that the

sender organization had "donated" 25 million pharmacy discount cards since its creation in November 2004 and was willing to donate an additional 10 million free cards "while supplies last." The fax then invited CSR to either fax a request indicating how many cards it would like to have donated or else to register the same on line at www.acirx.org. CSR did not accept this "offer." A copy of the facsimile is attached as EXHIBIT B.

25.    CSR has had many similar offers to receive so-called pharmacy discount cards and has declined to accept any of them. For the protection and benefit of its patients, CSR reserves distributing goods, services, premiums, discounts, and/or promotions only from organizations that it knows to be trustworthy and whose products or services have a demonstrable benefit to the patients it serves. In the case of pharmaceutical subsidies, CSR distributes to patients offers for indigent subsidy on the part of pharmaceutical manufacturers as well as from its own discount program sponsored by SunRx.

26.    CSR declined to request any cards from American Consultants Rx and never contacted that organization in conjunction with the facsimile sent in July 2010. At no time thereafter, did CSR ask for, invite, solicit, order or in any way indicate that it would accept American Consultant Rx pharmacy discount cards.

27.    On or about May 29, 2012, a video was posted to YouTube that announced a "Tribute and Help" to CHRISTUS Santa Rosa Children's Hospital. The video purports that one "Charles Myrick" had made a "donation" to CSR to assist uninsured patients with discounts at pharmacies. Specifically, the video narrator intones over written text: "The latest organization to receive free ACRX discount prescription cards is the Christus [sic] Santa Rosa Children's Hospital." Upon information and belief, the video was posted by Defendants American

Consultants Rx and Charles Myrick.  A copy of the subject video, hereinafter referred to as the "Tribute and Help" video, is appended hereto as EXHIBIT C.

28.     In addition, the very same video was displayed on the promotional websites of Defendants' portals for the sale of goods, American Consultants Rx (www.acrx.org) and American Consultants, Inc. (www.acrix.org) as well as other linked sites such as www.medicinecards.net and http://charlesmyrick.com

29.     Upon information and belief, the Defendants accessed the albums compiled and published by CSR on the Internet, including on social media platforms such as Facebook, and appropriated the photographs contained therein into the "Tribute and Help" video. The video displays copyrighted photographs taken by CSR and posted to Facebook in one or more of its compilation albums.  Defendants never asked permission to display these copyrighted works nor was any granted.  Had such permission been requested to use CSR's photographs (including those of children suffering from cancer) for Defendant's commercial purposes, it would have been declined.

30.     The "Tribute and Help" video prominently displays the CHRISTUS trademark on websites owned by the Defendants.  Defendants never asked permission to use the CHRISTUS mark on their websites or in their video nor was any permission ever granted to do so.  Had such permission been requested, it would have been declined.

31.     The "Tribute and Help" video prominently displays the trademarked CHRISTUS Greek Cross logo on websites owned by the Defendants.  Defendants never asked permission to use the CHRISTUS logo mark on their websites or in their video nor was any permission ever granted to do so.  Had such permission been requested, it would have been declined.

32.    The "Tribute and Help" video prominently displays the CHRISTUS Santa Rosa service mark on websites owned by the Defendants.  Defendants never asked permission to use the Santa Rosa mark on their websites or in their video nor was any permission ever granted to do so.  Had such permission been requested, it would have been declined.

33.    CHRISTUS never received free pharmacy discount cards from Defendants that could in turn be credibly given to patients.  Defendants' facsimile instructs CHRISTUS to request cards by fax or by web visit and none were ever so requested.  Defendants, therefore, donated nothing of value to CHRISTUS.

34.    Following the posting of the video that uses CHRISTUS's marks and copyrighted materials without its permission, Defendants, upon information and belief, began using the Twitter service for "tweeting" links to the video and again falsely asserting that CHRISTUS Santa Rosa Children's Hospital had been the beneficiary of donated prescription discount cards when in fact it had not.

35.    Upon information and belief, during the month of June 2012, and in the months thereafter Defendants continued to "tweet" links to sites playing the infringing video and to further assert that CHRISTUS Santa Rosa Children's Hospital received "free medicine help."

36.    After the so-called "Tribute and Help" video first appeared on or about May 29, 2012, CHRISTUS counsel phoned Defendant ACRX on June 6, 2012 to request the removal of the infringing video and the cessation of any purported affiliation between Defendants and CHRISTUS.

37.    That same day, June 6, 2012, CHRISTUS received a voicemail from Mr. Myrick at ACRX claiming that their uses of CSR's photographs were exempt from claims of copyright

infringement because they fell under the doctrine of "Fair Use." Further, he directed that future communication be with his attorney, Mr. Winston Denmark.

38.     On or about June 7, 2012, CHRISTUS mailed a formal Cease and Desist letter to both Defendant Myrick and his attorney, Mr. Denmark. On or about June 13, 2012, Mr. Denmark notified CHRISTUS counsel that he would advise his client to remove the infringing video. Notwithstanding that, Defendant has never responded to the Cease and Desist letter except to cause it to be "returned to sender."

39.     Upon information and belief, not only did Defendant refuse to respond to the Cease and Desist letter, Mr. Myrick's attorney, Mr. Denmark, never returned follow-up voicemails left for him by CHRISTUS counsel on June 22, 2012, June 27, 2012, and June 29, 2012. Defendants continued — and upon information and belief, still continue — to tweet links to the infringing video on the various websites where it was and is posted. At this point, after reasonable requests for cessation of Defendants' infringing behavior, CHRISTUS has no choice other than to ask for judicial relief.

**E.      Defendants Operate A For Profit Enterprise Under The Guise Of Charity.**

Defendants host a variety of websites including but not limited to[1]

www.acirx.org; www.acirx.com; www.acrx.org; www.charlesmyrick.com;
www.charlesmyrick.org; www.medicinecards.net; www.medicinecards.org;
http://charlesmyrick.us; www.uspharmacydiscountnetwork.info;
http://freecharityhelp.info/?p=2356; http://freehealthcarenews.biz/;
http://poormedicinehelp.biz/; and http://medicinediscountcards.net/.

40.     Each of these sites has two elements in common. First, they contain one or more "Tribute and Help" styled videos, photo albums, or articles all of which purport to affiliate an

---

[1] In addition to the aforementioned sites, upon information and belief, Defendant also owns the domain rights to approximately 1,500 potential URL designations.

alleged donation of pharmacy discount cards to and with the good works of a wide variety of institutions.  On them, including the infringing video that is the subject of this action, Defendants as much as admit that they have appropriated their subject's intellectual property but claim that "Under Section 107 of the Copyright Act 1976, allowance is made for 'fair use' for purposes such as criticism, comment, news reporting, teaching, scholarship and research."  Second, on the very same website, there is a pull down tab which offers a wide variety of products for sale.

41.     Some of the products for sale include nutritional supplements that are unregulated by the United States Food and Drug Administration; homeopathic remedies of a purported "natural" origin; beauty aids; dermatological preparations; and a variety of other sundry items that have as their purported aim a contribution to good health.

42.     Other of the products for sale include manuals, books, publications, pamphlets and other forms of communication and apparatuses that may contain controversial or even salacious material albeit couched in the generalized category of emotional well-being or quality of life enhancements.

43.     In addition to the sale of products, several of Defendants' websites express strong opinions, some of a political nature, about the state of healthcare, the federal budget and other controversial issues of a policy nature.

**F.     Defendants' False Affiliation With CHRISTUS, Use Of Its Marks And Infringement Of CHRISTUS's Copyrights Harms CHRISTUS In A Way That No Monies Can Adequately Compensate.**

44.     Defendants' unauthorized use of the CHRISTUS Health and CSR marks are likely to confuse viewers of Defendants' advertisements, promotions, and other web content that CHRISTUS supports the Defendants' enterprises or approves of or endorses its commercial solicitations when in fact it does not.

52255966.4                                    - 13 -

45.    Defendants' unauthorized use of CSR's copyrighted material falsely portrays Defendants' commercial endeavors as affiliated with the ministry of CSR and false implies a close alignment of Defendants' for-profit venture with CSR's charitably-purposed healing efforts directed at profoundly ill children.  Defendants' appropriation of CSR's copyrighted material for rank commercial benefit negates any fair use claim.

46.    Defendants' assertion that it has donated pharmacy discount cards to CSR Children's Hospital is literally false.  Two years prior to Defendants' advertisement of its purported donation, American Consultants Rx offered CSR's Cystic Fibrosis Clinic the opportunity to "request the amount of cards needed."  That invitation to request was rejected by CSR.  Defendants' assertion that its uninvited, unaccepted invitation was somehow a donation is false and incorrectly suggests a relationship between the two parties when in fact none exists.

47.    Defendants' false portrayal of affiliation with CHRISTUS arising from its expropriation of CSR's copyrighted material, CHRISTUS's marks and its falsely advertised assertions of donative prowess, injure CHRISTUS in ways that money damages alone cannot cure.

48.    CHRISTUS has spent large amounts of time, effort, and money to achieve a level of medical expertise and a reputation for top quality patient care.  Being falsely affiliated with Defendants' extensive line of non-mainstream, purported health aids denigrates its image in mainstream medical expertise and is injurious to CHRISTUS's hard-earned reputation for the same.

49.    Falsely being affiliated with a so-called pharmacy discount card which is not — and never has been — accepted in CSR's own pharmacies, places at risk its own indigent care pharmaceutical subsidy program as well as represents the potential to impair the non-retail

pharmacy status consistent with its high level of licensure and innovative academic and research activities.

50.     Falsely being affiliated with a platform for opinion and political ideology injures CHRISTUS because readers of Defendants' sites may assume that Defendants' opinions are in harmony with CHRISTUS's, when in fact CHRISTUS has opposing views or has deliberately chosen to remain silent with respect to these divisive issues.

51.     Falsely being affiliated with Defendants' products that are unrelated to healthcare at best, and antithetical to the religious and moral tenets of the CHRISTUS ministry, represents harm to its reputation and goodwill.

52.     CHRISTUS objects to in any way being affiliated with Defendant Charles Myrick.  The initial basis of this objection is simply that such alleged affiliation is untrue. Independently of that objection, upon information and belief, Mr. Myrick's history, background, and actions just prior to founding ACRX render any association between Defendants and CHRISTUS as deleterious to its good name and earned reputation.  A summary of findings is contained in "Final Order, Case No. INS 03-11-016, *In the Matter of* **Charles L. Myrick, Jr**., State of Oregon, March 8, 2004," attached as EXHIBIT D.[2]

53.     Upon information and belief, Mr. Charles Lee Myrick was convicted by the Clayton Superior Court for the State of Georgia in the criminal case styled *State of Georgia v. Charles Lee Myrick*, case number 90-CR-21599-1.

---

[2] Obviously, until discovery has occurred, CHRSITUS is unable to affirmatively state that the Charles Lee Myrick in the public records is the same Charles Lee Myrick as the Defendant.  However, it is unable to locate any Charles Lee Myricks that do not have such a criminal record – and presumes that any consumer/patient would also believe such affiliation exists if they checked the public records.

54.     Upon information and belief, Mr. Myrick was found guilty of (i) forgery in the first degree; (ii) criminal receipt of goods fraudulently received; and (iii) financial transaction card fraud.  Upon information and belief, Mr. Myrick was sentenced to five years in prison.

55.     Upon information and belief, subsequent to his guilt being established beyond a reasonable doubt, Mr. Myrick failed to disclose his criminal convictions to the State of Georgia when applying for an insurance agent's license and then again upon renewing it.  In February 2003, the State of Georgia therefore suspended Mr. Myrick's insurance license and fined him $5,000.00.

56.     Upon information and belief, similarly, the States of Arizona, Connecticut, Kansas and Oregon all revoked Mr. Myrick's non-resident insurance licenses for his failures to disclose similar license revocations and/or his falsified applications in which he denied ever being arrested, charged or convicted of a criminal offense.

### IV.     COUNT I: COPYRIGHT INFRINGEMENT

57.     CHRISTUS incorporates herein and re-alleges as if fully set forth in this Paragraph, the allegations of Paragraphs 1-56, above, inclusive.

58.     The photographs, compilations of photographs, and captions thereto displayed in certain CSR marketing pieces, including those on social media, are original, copyrightable subject matter under the laws of the United States and CHRISTUS owns valid and subsisting copyrights in and to them.

59.     CHRISTUS filed copyright applications together with the requisite filing fees and deposit materials for the aforementioned photographs displayed in certain CSR marketing pieces, including those on social media,  and the United States Copyright office has received these applications.

60.     CHRISTUS's copyrights in the subject photographic works are valuable assets to its marketing efforts and activities and constitute value in goodwill.

61.     By accessing, copying, and using CHRISTUS's copyrighted materials without authorization, Defendants are committing copyright infringement in violation of the exclusive rights that CHRISTUS owns pursuant to the Copyright Act, 17 U.S.C. §106.

62.     The copyright infringement by Defendants is knowing, chronic, intentional, deliberate and willful with full knowledge and in conscious disregard of CHRISTUS's copyrights.

63.     Defendants' pretense that its acts of infringement are somehow research, teaching, news reporting, scholarship or any other putative fair use instead of its rank appropriation for commerce represents an additional level of willfulness and deceit.

64.     As a result of the Defendants' acts of infringement, CHRISTUS is now suffering irreparable harm for which there is no remedy at law.  Unless and until Defendants are enjoined by this court, the Defendants will continue to commit acts of infringement and will continue to cause irreparable harm to CHRISTUS.  CHRISTUS is entitled to injunctive relief pursuant to 17 U.S.C. §502.

65.     As a result of Defendants' acts of infringement, CHRISTUS is entitled to recover its actual damages and any additional profits of Defendants pursuant to 17 U.S.C. §504(b)

### V.     COUNT II: FEDERAL TRADEMARK INFRINGEMENT

66.     CHRISTUS incorporates herein and re-alleges as if fully set forth in this Paragraph, the allegations of Paragraphs 1-56, above, inclusive.

67.     The acts of Defendants complained of herein constitute infringement of CHRISTUS's federally registered marks in the name "CHRISTUS" and in the CHRISTUS "Greek Cross Logo," in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(a).

68.     The acts of Defendants complained of herein constitute infringement of CHRISTUS Santa Rosa's federally registered service mark in the name "Santa Rosa," in violation of Section 32 of the Lanham Act, 15 U.S.C.§ 1114(a)

69.     Defendants' acts have been willful and in bad faith with full knowledge of CHRISTUS Health's and CSR's rights in their respective marks. Therefore, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

70.     Defendants' acts have damaged CHRISTUS in an amount currently unknown but to be proven at trial.

## VI.     COUNT III: STATE LAW CLAIM OF INJURY TO BUSINESS REPUTATION OR TRADE NAME OR MARK

71.     CHRISTUS incorporates herein and re-allege as if fully set forth in this Paragraph, the allegations of Paragraphs 1-56 and 66-70, above, inclusive.

72.     The acts of Defendants complained of herein constitute acts of tarnishment of the CSR service mark and the CHRISTUS Health marks in the name "CHRISTUS" and the CHRISTUS Greek Cross under the Tex. Bus. & Comm. Code § 16.29.

73.     CHRISTUS has been injured and will continue to be injured by Defendants' acts of tarnishment and CHRISTUS is entitled to an amount currently unknown but to be proven at trial.

74.     CHRISTUS will continue to be harmed unless and until this court enjoins the actions of Defendants and the Defendants will continue to commit acts of infringement and will

continue to cause irreparable harm to CHRISTUS.  CHRISTUS is entitled to injunctive relief pursuant to Rule 680 et seq. of the Texas Rules of Civil Procedure.

## VII.    COUNT IV: FEDERAL UNFAIR COMPETITION

75.    CHRISTUS incorporates herein and re-alleges as if fully set forth in this Paragraph, the allegations of Paragraphs 1-74, above, inclusive.

76.    CHRISTUS and CHRISTUS Santa Rosa are uniquely and famously associated with their marks, which represent its mission and ministry.

77.    Defendant's false representations regarding its alleged donations to CHRISTUS Santa Rosa Children's Hospital and its expropriation of CHRISTUS's intellectual property has and will deceive readers of Defendants' websites and other venues as well as CSR and CHRISTUS Health stakeholders who encounter the same.

78.    The acts of Defendants complained of herein constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

79.    As a result of Defendants' acts, CHRISTUS has suffered losses in an amount currently undetermined but to be proven at trial.

80.    Defendants' acts are willful, wanton, and calculated to deceive and are undertaken in bad faith, making this an exceptional case entitling CHRISTUS to recover additional damages and  reasonable attorney's fees pursuant to 15. U.S.C. § 1117.

81.    Unless enjoined by this court, Defendants' acts will continue to cause immediate and irreparable harm to CHRISTUS for which there is no adequate remedy at law.  Pursuant to 15 U.S.C. § 1116, CHRISTUS is entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing acts.

## VIII.   JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.    A judgment and order that each Defendant, its agents, servants, employees, attorneys, successors and assigns and all others in active concert or participation with them, be preliminarily and permanently enjoined from employing, using, displaying, or promoting, any service or trade mark owned by CHRISTUS for any purpose whatsoever without its advanced written consent.  In addition, CHRISTUS seeks an injunction preliminarily and permanently that enjoins each Defendant, its agents, servants, employees, attorneys, successors and assigns and all others in active concert or participation with them from employing, using, displaying, or promoting the names "CHRISTUS," "CHRISTUS Santa Rosa," and the CHRISTUS Greek Cross logo or any variation, misspelling, phonetic equivalent or formative thereof as a metatag or keyword or adword to trigger an advertising spot on internet search engines;

B.    A judgment and order that each Defendant, its agents, servants, employees, attorneys, successors and assigns and all others in active concert or participation with them, be preliminarily and permanently enjoined from employing, using, displaying, promoting, duplicating, distributing, advertising, selling, adapting, altering, publishing, reproducing, preparing derivative works, or offering for sale or lease any copyrighted material owned now or in the future by CHRISTUS for any purpose whatsoever without its advanced written consent;

C.    A judgment and order that each Defendant, its agents, servants, employees, attorneys, successors and assigns and all others in active concert or participation with them, be preliminarily and permanently enjoined from falsely asserting that it donates or has donated pharmacy discount cards to CHRISTUS;

D.      A judgment and order that each Defendant, its agents, servants, employees, attorneys, successors and assigns and all others in active concert or participation with them, be preliminarily and permanently enjoined from asserting or implying any affiliation between CHRISTUS and any, some or all the Defendants;

E.      A judgment ordering, as specifically provided by 17 U.S.C. § 503, the destruction of all infringing copies of materials that include all or any part of CHRISTUS's protected intellectual property;

F.      A judgment and order requiring Defendants to pay CHRISTUS damages in an amount sufficient to compensate CHRISTUS for injuries it has sustained as a consequence of Defendants' unlawful acts;

G.      A judgment and order finding that this is an exceptional case and requiring Defendants to pay CHRISTUS additional damages pursuant to 15 U.S.C. § 1117(a);

H.      A judgment and order requiring Defendants to pay the costs of this action under 15 U.S.C. § 1117(a); and

I.      Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Marc Collier
State Bar No. 00792418
Jason Turner
State Bar No. 24047007
FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Blvd., Ste. 1100
Austin, Texas  78701
Telephone: (512) 474-5201
Telecopier: (512) 536-4598

Attorney for Plaintiffs
CHRISTUS Health Systems Corp.
CHRISTUS Santa Rosa Health Care Corp.