UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHRISTUS HEALTH CARE SYSTEMS, INC., and CHRISTUS SANTA ROSA HEALTH CARE CORPORATION, | § § § § § | |
| | § | No. SA:12-CV-1221-DAE |
| Plaintiffs, | § § | |
| vs. | § § | |
| AMERICAN CONSULTANTS RX, INC., AMERICAN CONSULTANTS, INC., and CHARLES MYRICK, | § § § § | |
| Defendants. | § § | |

ORDER (1) STRIKING DEFENDANTS' ANSWER AND VACATING
DEFENDANTS' SPECIAL APPEARANCES; (2) ORDERING THE CLERK OF
THE COURT TO ENTER DEFAULT; (3) GRANTING PLAINTIFFS' MOTION
TO ENTER A DEFAULT JUDGMENT AND A PERMANENT INJUNCTION
AGAINST ALL DEFENDANTS; AND (4) GRANTING PLAINTIFFS'
<u>REQUEST FOR ATTORNEY'S FEES</u>

Plaintiffs, Christus Health Care Systems, Inc., and Christus Santa

Rosa Healthcare Corp. (collectively, "Plaintiffs") sued American Consultants RX,

Inc., American Consultants, Inc., and Charles Myrick (collectively, "Defendants")

on December 26, 2012 alleging violations of the Copyright Act, 17 U.S.C. § 101 <u>et</u>

<u>seq.</u>; the Lanham Act, 18 U.S.C. § 1051 <u>et seq.</u>; federal unfair competition law, and

Texas Business and Commerce Code § 16.29.  (Dkt. # 1.)  Plaintiffs moved for a

1

default judgment and permanent injunction (Dkt. # 19).  After hearing nothing

from Defendants, Plaintiffs requested a hearing (Dkt. # 20).  The Court held a

hearing on January 23, 2014.  Robert L. Rouder, Esq., and Gaylynn Griffin, Esq.,

represented Plaintiffs.  Neither Charles Myrick nor any representative for

Defendants appeared.  Plaintiffs' Motion for Entry of Default (Dkt. # 18) and

Plaintiffs' Motion to Enforce Court Order and Enter a Default Judgment and

Permanent Injunction against All Defendants (Dkt. # 19) are currently pending

before the Court.  After careful consideration of the arguments and memoranda,

and for the reasons that follow, the Court **ORDERS** the Clerk of the Court to enter

a default against Defendants (Dkt. # 18) and **GRANTS** Plaintiffs' Motion to Enter

a Default Judgment and Permanent Injunction (Dkt. # 19).

<u>BACKGROUND</u>

Plaintiffs are non-profit corporations chartered in Texas.  (<u>Id.</u>)

Defendants American Consultants RX, Inc. and American Consultants, Inc.

("the corporate Defendants") are both for-profit corporations legally chartered in

California.  (<u>See</u> Dkt. # 14 Exs. A, B; Dkt. # 8 ¶¶ 3–5.)  Defendant Charles Myrick

is President and CEO of both corporations.  (Dkt. # 8 at 12.)

Plaintiffs filed a Complaint alleging that Defendants used Plaintiffs'

federally registered marks and copyrighted material in an effort to promote their

own business.  (Dkt. # 1.)  Plaintiffs argue that as non-profit and charitable

2

organizations, they have created significant goodwill and become synonymous with the provision of quality healthcare services. (Id. ¶¶ 11–20.) They also contend that Defendants have attempted to affiliate themselves with Plaintiffs by illegally using Plaintiffs' marks and copyrights. (Id. ¶¶ 24–39.) Plaintiffs additionally maintain that Defendants' use of their marks has irreparably harmed them. (Id. ¶¶ 49–52.)

The corporate Defendants entered special appearances and answered without counsel. (Dkt. ## 7, 8.) Defendant Myrick entered a special appearance and answered, but failed to comply with Local Rule CV-10 that requires an unrepresented party to include a "mailing address, e-mail address, signature, and telephone and fax numbers." (Dkt. ## 7, 8.)

On March 11, 2013, Plaintiffs filed a Motion to Strike Defendants' Answer and Vacate Their Special Appearances. (Dkt. # 14.) On July 18, 2013, the Court denied Plaintiffs' motion without prejudice and ordered the corporate Defendants to obtain legal counsel and enter an appearance within twenty days. (Dkt. # 16.) The Court also ordered Defendant Myrick to amend his Special Appearance and Answer to comply with the Local Rules within twenty-eight days. (Id.) Defendants declined to comply with either of these directives, and on October 9, 2013, the Plaintiffs moved to enforce the July 18, 2013 court order,

moved for the entry of a default judgment, and sought a permanent injunction against all Defendants.  (Dkt. # 19.)  Defendants did not file a response.

<u>ANALYSIS</u>

I.      <u>Request for Entry of Default</u>

The entry of default against a party who fails to defend is to be done by the clerk.  Fed. R. Civ. P. 55(a).  The clerk may enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise."  <u>Id.</u>

On July 18, 2013, the Court ordered Defendants American Consultants RX, Inc. and American Consultants Inc. to obtain counsel within twenty days or the Court would strike their Answer and vacate their Special Appearances.  (Dkt. # 16.)  Additionally, the Court ordered that Defendant Myrick amend his answer to comply with the Local Rules within twenty-eight days of the Order or the Court would strike his Answer and vacate his Special Appearance. (<u>Id.</u>)  All Defendants declined to comply.[1]

_____

[1] Plaintiffs provided an affidavit from Marc B. Collier, Plaintiffs' attorney, stating that, "[t]o date the Defendants have failed to file a proper answer with the Court" and have failed "to comply with the Court's July 18, 2013 Order."  (Dkt. # 18.) Collier further averred that he "has received no communication from the Defendants since the July 18, 2013 Order."  (<u>Id.</u>)

The Court hereby **STRIKES** the Defendants' Answer and **VACATES** all of their Special Appearances.  Because the Defendants have failed to defend this suit, the Court **ORDERS** the Clerk of the Court to enter default.

II.    <u>Motion for Default Judgment</u>

Once the clerk enters default, a plaintiff "must apply to the court for a default judgment" when its claim is not for a "sum certain."  Fed. R. Civ. P. 55(b)(2).  "The entry of a default judgment pursuant to Rule 55(b), Fed. R. Civ. P., is not a matter of right but is in the sound discretion of the court."  <u>Finch v. Big Chief Drilling Co.</u>, 56 F.R.D. 456, 458 (E.D. Tex. 1972) (quoting <u>Bavouset v. Shaw's of SF</u>, 43 F.R.D. 296, 297–98 (S.D. Tex. 1967)).  In evaluating whether or not to grant a default judgment, a court considers "(1) whether default judgment is procedurally warranted; (2) whether the [complaint] sufficiently sets forth facts establishing that it is entitled to relief; and (3) what form of relief, if any, [the plaintiff] should receive."  <u>United States v. $19,840.00 in United States Currency More or Less</u>, 552 F. Supp. 2d 632, 635 (W.D. Tex. 2008).

"If the party against whom judgment by default is sought <u>has appeared in the action</u>, the party . . . shall be served with written notice of the application [for default judgment] at least 3 days prior to the hearing on such application."  <u>Interscope Records v. Benavides</u>, 241 F.R.D. 458, 460 (W.D. Tex. 2006).  The Fifth Circuit defines an appearance broadly:

> An appearance is not limited to those instances in which the party has
> made a physical appearance in court or has filed a document in the
> record.  Rather, we have required only that the party against whom the
> default judgment is sought indicate in some way an intent to pursue a
> defense.

Id. (quoting United States v. McCoy, 954 F.2d 1000, 1003 (5th Cir. 1992))

(internal quotation marks omitted).

### A.   Defendants Have Not Appeared

Here, Defendants have clearly shown that they have no intention of

defending against the claims in the complaint: Defendants have refused to comply

with the Court's orders and have failed to respond to Plaintiffs' motion for default

and default judgment.

Because of Defendants' failures to adhere to the Court's orders, the

Court has stricken the Defendants' Answer and vacated their Special Appearances.

Therefore, the Court finds that Defendants have not appeared in this action,

thereby relieving Plaintiffs of the requirement that they serve Defendants three

days prior to the hearing.

### B.   Default Is Procedurally Warranted

Defendants' failure to enter proper appearances, failure to file a

procedurally acceptable answer, failure to comply with this Court's orders, and

failure to defend against this suit in any manner warrant the issuance of a default

judgment.  See $19,840.00 in United States Currency, 552 F. Supp. 2d at 635

(ordering entry of default when the defendant's answer was two days late, the

6

defendant had made no application to the court to allow the answer, and the defendant failed to respond to the government's motion to strike the answer).

     C.    The Complaint Sets Forth Sufficient Facts to Entitle Plaintiffs to Relief

Before granting a default judgment, a court must look to the well-pleaded factual allegations in the complaint to determine whether the moving party has established a valid cause of action. Id. at 636. "In other words, [t]here must be a sufficient basis in the pleadings for the judgment. A defendant, by his default admits the plaintiff's well-pleaded allegations of fact. . . . [T]he Court may only enter default judgment . . . if the [the plaintiff's] well-pleaded factual allegations establish a valid cause of action." Id.

By virtue of the Defendants' default, they have admitted the allegations in the complaint. See Mayflower Transit, L.L.C. v. Troutt, 332 F. Supp. 2d 971, 975 (W.D. Tex. 2004). In the Complaint, Plaintiffs pleaded (1) copyright infringement, in violation of the Copyright Act, 17 U.S.C. § 101 et seq.; (2) federal trademark infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(a); (3) injury to business reputation or trade name or mark, in violation of Tex. Bus. & Comm. Code § 16.103; and (4) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (See Dkt. # 1 at 16–19.)

1.   <u>Copyright Infringement</u>

"A copyright infringement action requires the plaintiff to prove ownership of a valid copyright and copying by the defendant." <u>Am. Registry of Radiologic Technologists v. Bennett</u>, 939 F. Supp. 2d 695, 702 (W.D. Tex. 2013) (quoting <u>Norma Ribbon & Trimming, Inc. v. Little</u>, 51 F.3d 45, 47 (5th Cir. 1995)). "Ownership is established by proving the originality and copyrightability of the material and compliance with statutory formalities. Copying is generally established by proving that the alleged infringer had access to the copyrighted materials and that the copyrighted material and the allegedly infringing material are substantially similar." <u>Id.</u> (internal citations and quotation marks omitted).

Here, Plaintiffs alleged that they own copyrights in the photographs and other marketing media that Defendants appropriated as their own. (Dkt. # 1 ¶¶ 29–31.) Plaintiffs alleged that Defendants had access to the materials via their website, and that Defendants subsequently used Plaintiffs' photographs and marketing media as their own to create the illusion of an affiliation. (<u>Id.</u>) Plaintiffs' complaint sets forth a sufficient basis to enter default judgment on their claim for copyright infringement.

2.   <u>Federal Trademark Infringement</u>

To establish a cause of action for federal trademark infringement pursuant to section 32 of the Lanham Act, Plaintiffs must show there is a legally

protectable mark and that Defendants' use of the mark creates "a likelihood of confusion in the minds of potential customers as to the source, affiliation or sponsorship of the services" provided by Defendants.  BankAmerica Corp. v. Nation's Bankers Mortg., Inc., 92 F. Supp. 2d 607, 610 (S.D. Tex. 1999).  A likelihood of confusion is "a probability of confusion, which is more than a mere possibility of confusion."  Id.

Plaintiffs allege that they own federally registered trademarks in the name "CHRISTUS" and in the CHRISTUS "Greek Cross Logo."  (Dkt. # 1 at 18.)  Additionally, Plaintiffs argue that the marks Defendants employed to promote their product were not merely similar to Plaintiffs' marks, but were identical to them.  (Id. at 11.)  Plaintiffs state that the marks were used to promote products related to healthcare, including nutritional supplements.  (Id. at 13.)  Because Defendants are using Plaintiffs' actual mark to promote Defendants' products and services within the same industry as Plaintiffs, the healthcare services industry, Plaintiffs' pleadings are sufficient to demonstrate there is a likelihood of confusion.  The Court finds that Plaintiffs' complaint provides sufficient basis to enter default judgment on their claim for trademark infringement.

### 3.    Injury to Business Reputation or Trade Name or Mark

Pursuant to § 16.103 of the Texas Business and Commerce Code, Plaintiffs pleaded a cause of action for injury to business reputation or trade name

or mark.[2]  To prevail on a cause of action under § 16.103, Plaintiffs must show

"(1) ownership of a distinctive mark and (2) a likelihood of dilution." Abraham v.

Alpha Chi Omega, 781 F. Supp. 2d 396, 428 (N.D. Tex. 2011).  A likelihood of

dilution may occur because of  "(1) 'blurring,' a diminution in the uniqueness and

individuality of the mark, or (2) 'tarnishment,' an injury resulting from another's

use of the mark in a manner that tarnishes or appropriates the goodwill and

reputation associated with plaintiff's mark." Id.

        Plaintiffs' pleadings establish that it was the owner of federally

registered and distinctive marks.  (Dkt. # 1 at 18.)  Additionally, Plaintiffs allege

that Defendants have tarnished Plaintiffs' goodwill by using Plaintiffs' marks to

market nutritional supplements that are unregulated by the United States Food and

Drug Administration, homeopathic remedies, and other health-related products that

Plaintiffs do not endorse.  (Id. at 13.)  Plaintiffs also assert that Defendants have

used Plaintiffs' marks in connection with political ideologies that Plaintiffs do not

espouse.  (Id. at 15.)  Plaintiffs argue that these affiliations harm their goodwill and

reputation.  (Id.)  Because Plaintiffs have shown ownership of federally registered

marks and a likelihood of dilution, Plaintiffs' complaint sets forth sufficient facts

---

[2] Plaintiffs cite to Texas Business and Commerce Code § 16.29 in their complaint;
however, this section has been recodified as Texas Business and Commerce Code
§ 16.103.

to enter default judgment on their claim for injury to their business reputation and trade name or mark.

### 4. Federal Unfair Competition

To establish a claim for unfair competition, Plaintiffs must demonstrate that there is a likelihood of confusion.  S & H Indus. v. Selander, 932 F. Supp. 2d 754, 762 (N.D. Tex. 2013).  Plaintiffs here have shown that Defendants' use of the CHRISTUS mark and the "Greek Cross Logo" within the healthcare industry has created a strong likelihood of confusion.  Therefore, Plaintiffs' complaint sets forth sufficient grounds to enter default judgment on their claim of unfair competition.

Plaintiffs' complaint has set forth sufficient allegations to warrant entry of default judgment on their claims for (1) copyright infringement, (2) federal trademark infringement, (3) injury to business reputation or trade name or mark, and (4) federal unfair competition.

### D. Relief Requested

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  "[T]he relief prayed for in a complaint defines the scope of relief available on default judgment."  $19,840.00 in United States Currency, 552 F. Supp. 2d at 637.

In the Complaint, Plaintiffs sought permanent injunctive relief, monetary relief, and costs.  (Dkt. # 1 at 20–21.)  In the instant motion for a default judgment, Plaintiffs have chosen to forego pursuing monetary compensation for their injuries, and instead seek only attorney's fees and permanent injunctive relief enjoining Defendants from continuing to use Plaintiffs' marks.  (Dkt. # 19 at 5.)

   1. <u>Attorney's Fees</u>

   The Copyright Act provides that a prevailing party may recover attorney's fees and costs.  17 U.S.C. § 505.  The prevailing party is the party "who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit."  <u>Granville v. Suckafree Records, Inc.</u>, No. Civ. A. H–03–3002, 2006 WL 2520909, at *2 (S.D. Tex. 2006).  In the Fifth Circuit, "an award of fees to the prevailing party in a copyright action is the rule rather than the exception and fees should be awarded routinely."  <u>Barnstormers, Inc. v. Wing Walkers, LLC</u>, No. EP–10–CV–261–KC, 2011 WL 1671641, at *6 (finding that a party who obtained a default judgment constituted a prevailing party) (citing <u>Hogan Sys., Inc. v. Cybresource Int'l, Inc.</u>, 158 F.3d 319, 325 (5th Cir. 1998) (internal quotation marks omitted)).  A court may "award a reasonable attorney's fee to the prevailing party as part of the costs."  <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 519 (1994).  Here, through the grant of a default judgment, Plaintiffs

have succeeded on all of their claims, and therefore, constitute prevailing parties entitled to an award of attorney's fees.

Plaintiffs are also entitled to an award of attorney's fees under the Lanham Act.  See 15 U.S.C. § 1117.  The Lanham Act provides for attorney's fees in exceptional cases—those in which the prevailing party can show, by clear and convincing evidence, that the non-prevailing party acted in bad faith.  See Scott Fetzer Co. v. House of Vacuums Inc., 381 F.3d 477, 490 (5th Cir. 2004); Pebble Beach Co. v. Tour 18 I, Ltd., 942 F. Supp. 1513, 1571 (S.D. Tex. 1996) ("An exceptional case is one where the violative acts can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'")  The Court considers all of the facts and circumstances surrounding the case to determine whether it is exceptional.  Pebble Beach Co., 942 F. Supp. at 1572.

In examining the totality of the circumstances, the Court finds that the underlying action constitutes an exceptional case for purposes of an attorney's fee award.  Plaintiffs are non-profit, charitable organizations, and Defendants have attempted to appropriate their goodwill by using the protected marks in an attempt to turn a profit.  Additionally, even after Plaintiffs contacted Defendants asking that they discontinue their infringing behavior, Defendants persisted in using Plaintiffs' marks to sell their unregulated healthcare products in order to enrich

themselves.  Defendants' actions were taken in bad faith, and therefore, an award of attorney's fees is appropriate.

Because Plaintiffs are entitled to an award of attorney's fees for each of their claims for attorney's fees under the Lanham Act and the Copyright Act, the Court will analyze the claims together.  The analysis under each statute is identical. The Fifth Circuit maintains that when attorney's fees are authorized by statute, as they are under the Lanham Act and Copyright Act, the district court must apply the 'lodestar' method.  Kiva Kitchen & Bath, Inc. v. Capital Distributing, Inc., 681 F. Supp. 2d 807, 813 (S.D. Tex. 2010) (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)).

Under the lodestar method, a court first determines the amount of reasonable attorney's fees by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  In calculating this amount, the Court "should exclude from this initial fee calculation hours that were not 'reasonably expended.'"  Id. at 434.

Once the amount of reasonable attorney's fees is ascertained, the court evaluates whether that amount should be adjusted upward or downward.  Id.  In determining whether the amount should be modified, the court may consider the twelve factors laid out in Johnson v. Georgia Highway Express:  (1) the time and

14

labor required; (2) the novelty and difficulty of the question; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the reasonable fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  488 F.2d at 717–19; see Hensley, 461 U.S. at 434.

        After calculating the lodestar, "[t]he court may adjust this lodestar up or down based on what is reasonable under the circumstances of the specific case." Randolph, 634 F. Supp. 2d at 793 (internal quotation marks omitted).  The court must take into account the degree of success obtained by the prevailing party, and in copyright cases, the court should also evaluate "the relative complexity of the litigation; the relative financial strength of the parties; the damages awarded; and whether the losing party acted in bad faith."  Id. (citing Lieb v. Topstone Indus., 788 F.2d 151, 156 (3d Cir. 1986)).  "[T]he moving party has the burden of demonstrating that its fee request is reasonable."  Id.

        "The first step in computing the lodestar is determining a reasonable hourly rate.  The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis

15

for determining a reasonable hourly rate.  The party seeking fees bears the burden of establishing the market rate and should present the court with evidence from which the court can determine the reasonableness of the proposed hourly rate." Randolph v. Dimension Films, 634 F. Supp. 2d 779, 797 (S.D. Tex. 2009) (internal citations and quotation marks omitted).

Plaintiffs request attorney's fees in the amount of $91,348.50 and an award of costs in the amount of $1,517.91 for a total award of $92,866.41. Plaintiffs state that they have actually incurred fees totaling $98,551.50, but have adjusted this number downward to remove expenses incurred in pursuit of attorney's fees and to mitigate the effect of the 2014 billing rate increases.

Plaintiffs submitted the National Law Journal Billing Surveys for Associates and Partners in support of their contention that the rates charged were reasonable.  Plaintiffs' attorneys' hourly billing rates ranged from $125 to $495 before 2014 and from $225 to $625 in 2014.  According to the National Law Journal statistics Plaintiffs' submitted, these rates are reasonable for a national law firm.  (Dkt. # 28 Ex. D.)

The Court next examines whether the number of hours expended was reasonable.  In total, between August 14, 2012, when attorney's fees began accruing, and January 23, 2014, when this Court held the hearing on Plaintiffs'

Motion for a Default Judgment, Plaintiffs' counsel expended a total of 256.4 hours. Although this number is not exorbitant, a number of entries are unreasonable.

Between August 14, 2012 and December 31, 2013, Plaintiffs' counsel billed for 181.8 hours totaling $66,275.50 in attorney's fees. This number appears wholly reasonable. In stark contrast, Plaintiffs seek reimbursement for 74.6 hours, expended in the month of January 2014, preparing for the hearing on Plaintiffs' motion for default judgment. This number is unreasonably large, amounting to nearly one third of the total hours expended in the case. According to the documents, one attorney billed 34.9 hours preparing for the hearing, including meeting with and preparing witnesses, conferencing with other attorneys regarding witnesses, and drafting outlines and preparing mock examinations of his witnesses. However, the hearing held on January 23, 2014 was not an evidentiary hearing; it was simply a motion hearing on Plaintiffs' motion for default judgment. Further, on January 23, 2014, the day of the hearing, Plaintiffs' counsel billed 5.8 hours to "final preparations for Court hearings on Plaintiffs' Dispositive Motions including meetings . . . ."

Additionally, the amounts claimed for January 2014 are far out of the ordinary for the rest of the case. For example, August 2012, the month with the second highest attorney's fees, the fees totaled just over $21,000. The next highest fee request was for September 2012, totaling just over $8,000. Moreover,

17

Plaintiffs' counsel never billed more than fifty-five hours in any month prior to January 2014, and Plaintiffs' counsel billed fewer than twenty hours in the majority of the other months.

Nonetheless, during the seventeen-month litigation, Plaintiffs drafted and filed a complaint, filed a motion to strike Defendants' answer, and moved for an entry of default judgment.  Given the work performed during these months, including researching the possibility of a successful suit and preparing the complaint, the fees incurred between August 2012 and December 2013 appear reasonable.  However, there can be little justification for approving attorney's fees for the month of January 2014 of more than $25,000.  During January 2014, Plaintiffs drafted a motion requesting a status conference and hearing on their motion for default judgment and they prepared for and attended the hearing.  The Court finds that a more reasonable number of hours expended would align with the hours expended in an above average month in the litigation.  According to Plaintiffs' counsels representations, the following hours were billed in each month:

| Month | Hours Billed |
|---|---|
| Aug-12 | 55 |
| Sep-12 | 22.1 |
| Oct-12 | 6.1 |
| Nov-12 | 14.6 |
| Dec-12 | 14 |
| Jan-13 | 3.4 |
| Feb-13 | 12.4 |

18

| | |
|---|---|
| Mar-13 | 1.5 |
| Apr-13 | 0 |
| May-13 | 0 |
| Jun-13 | 0.2 |
| Jul-13 | 7 |
| Aug-13 | 18 |
| Sep-13 | 10.1 |
| Oct-13 | 13.2 |
| Nov-13 | 0 |
| Dec-13 | 4.2 |
| Jan-14 | 74.6 |

The Court finds that twenty-two hours represents a reasonable number of hours for Plaintiffs' counsel to have expended in preparing for and attending the January 2014 hearing. The Court will prorate the requested fees for January accordingly,[3] and finds that for the month of January 2014, a reasonable amount of attorney's fees is $9,518.39. The lodestar becomes the sum of the attorney's fees claimed between August 2012 and December 2013 ($66,275.50) and the pro-rated amount of attorney's fees for January 2014 ($9,518.39). The lodestar in total is $66,275.5 + $9,518.39 = $75,793.89.

Once the lodestar has been calculated, the Court then examines the Johnson factors to determine whether the amount should be adjusted. Here, although the case did not present novel or complex issues, the Court recognizes the

---

[3] Plaintiffs initially requested $32,276.00 for 74.6 hours of work performed in January 2014. Because the Court finds that 22 is a more appropriate number, the fee shall be reduced proportionately. 22/74.6 = 0.295. Therefore, the corresponding fee amount is 0.295 * $32,276.00 = $9,518.39.

difficulty in attempting to proceed against an opponent who refuses to engage in the litigation process. Additionally, the Court recognizes the fact that Plaintiffs were completely successful on their claims. See Randolph, 634 F. Supp. 2d at 800 (recognizing that a prevailing party's complete success weighs in favor of not reducing the lodestar). Accordingly, the Court finds that the lodestar represents an appropriate amount of attorney's fees and finds no reason to adjust the value. Therefore, the Court **GRANTS** Plaintiffs' request for attorney's fees in the amount of **$75,793.89.**

Plaintiffs have also requested an award of costs in the amount of $1,517.91. The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. Additionally, costs are authorized under the Lanham Act when a plaintiff's trademark has been infringed. 15 U.S.C. § 1117(a). Because Plaintiffs qualify for fees under both the Copyright and Lanham acts, the Court **GRANTS** Plaintiffs' request for costs in the amount of **$1,517.91**.

2.   Injunctive Relief

Plaintiffs argue they are entitled to injunctive relief. Under traditional principles of equity, to be entitled to injunctive relief "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that

20

injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 394 (2006). The Supreme Court explicitly held that this traditional four-factor test is to be used to evaluate requests for injunctive relief under the Copyright Act. Id. Additionally, the four-factor test is also appropriate for claims under the Lanham Act, which "authorizes courts to grant injunctions according to principles of equity." Park 'N Fly Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 202 (1985) (citing 15 U.S.C. 1116) (internal quotation marks omitted); Eastman Chemical Co. v. PlastiPure, Inc., No. A–12–CA–057–SS, 2013 WL 4677702, at *7–8 (W.D. Tex. Aug. 30, 2013).

First, Plaintiffs have established that Defendants used their marks without permission and that the unlawful use harmed, and continues to harm, Plaintiffs' reputation and goodwill. Additionally, the Fifth Circuit recognizes that injuries like the one Plaintiffs have pleaded, are irreparable. E. & J. Gallo Winery v. Spider Webs Ltd., 286 F.3d 270, 279 (5th Cir. 2002). Second, Plaintiffs have shown that this injury cannot be adequately remedied at law, and have even chosen to forego monetary damages. Plaintiffs' choice to seek only injunctive relief bolsters their argument that monetary damages cannot adequately compensate Plaintiffs for the injuries they have suffered. Third, because Defendants' use of the

21

mark is malicious, the balance of hardships weighs entirely in favor of granting Plaintiffs injunctive relief.  Finally, Plaintiffs have shown that the public interest will be best served by issuing a preliminary injunction to avoid the current ambiguity regarding whether Defendants unregulated products are endorsed by Plaintiffs.  Therefore, the Court finds that Plaintiffs are entitled to permanent injunctive relief.

CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** the Clerk of the Court to enter default against Defendants (Dkt. # 18), **GRANTS** Plaintiffs' Motion to Enter a Default Judgment and Permanent Injunction (Dkt. # 19), **GRANTS** Plaintiffs' Request for attorney's fees in the amount of **$75,793.89** and costs in the amount of **$1,517.91**. (Id.).  Additionally, the Court **GRANTS** Plaintiffs' request for permanent injunctive relief against Defendants.

IT IS SO ORDERED.

DATED:  San Antonio, Texas, March 18, 2014.

David Alan Ezra
Senior United States District Judge